John H. Cooke, J.
FINDINGS OF FACT
This is a claim for the appropriation of claimant’s land pursuant to section 30 of the Highway Law for the Southern Tier Expressway, East Owego Connection, Tioga County, being Map No. 66, Parcels numbered 108 and 109.
The aforesaid map and description were filed in the office of the Secretary of State; in the office of the County Clerk of Tioga County, on the 5th day of November, 1965, and personal service was made on the claimant.
The claim was filed with the Clerk of the Court of Claims and the Attorney-General on the 23rd day of October, 1967, and has not been assigned or submitted to any other court or tribunal for audit or determination.
The court adopts the description of the appropriated property as shown on the map and description filed in the Tioga County Clerk’s office, a copy of which is attached to the claim and same is incorporated herein by reference.
Claimant was the owner of the property by reason of a deed dated October 27, 1960 from Eastern Shore Shopping Centers, Inc., grantor, to the Grand Union Company, grantee, recorded on the 7th day of November, 1960, in the Tioga County Clerk’s office in Liber 300 of Deeds at page 197.
Before the appropriation, the property consisted of 9.75± acres, located between Route 17C and the Susquehanna River *679 in the Town of Owego, Tioga County, and had been used as vacant land. The subject property, before the appropriation, had a frontage of 689.26± feet on Route 170. The lot was nearly .square, being slightly wider on the east than on the west side. Although the lot was level, it was somewhat below the grade of Route 17C. The rear lot line of the property abuts the Susquehanna River and there is a steep slope between the subject property and the river.
The appropriation consists of two parcels: one, which is taken without access adjacent to the existing Route 170, containing an area of 0.590± acres; the second, contains 3.479± acres and is at the west and south side of the subject property. The total area appropriated contains 4.069± acres, leaving a remainder to the claimant of 5.681± acres.
Prior to this appropriation, the State of New York appropriated in fee 0.635± acres from the subject property. This was a strip along the southern boundary of Route 170. In addition, the State had also acquired a permanent easement, adjacent to the western property boundary extending from the south boundary of the property to the north bank of the river, for drainage purposes. This easement, 50± feet in width, is referred to as Map No. 31, Parcel No. 38.
Map No. 66, Parcel No. 108, appropriates 3.479± acres as a fee taking. This parcel extends along the southern boundary of Route 17C, 135.0± feet to the northwest corner of the property. From this point, it extends southerly along the west property boundary, a distance of 537.14± feet to the north bank of the Susquehanna River; thence proceeding 693± feet southeasterly along the .north bank of the river to the east property line; thence north along the east property line 115± feet; thence westerly and northerly at various distances to the place of beginning. Upon this parcel, the State of New York ■has constructed an access road from Route 17C to a State park easterly of claimant’s property. This parcel covers all of the area acquired under the terms of the permanent easement, Map No. 31, Parcel No. 38.
Map No. 66, Parcel No. 109, appropriates in fee, without the right of access, 0.590± acres. This parcel is triangular in shape and extends along the southern boundary of Route 17C, eliminating any right of access to said Route 170.
The highest and best use of the property was not affected by the appropriation and is for commercial purposes.
As a result of the appropriation, claimant lost its frontage on Route 170 as well as 693± feet of Susquehanna River frontage. However, the highway appropriation (Map No. 66, Parcel *680 No. 108) has created 932.57± feet of new road frontage. This frontage is along the eastern and northern boundaries of the new access road.
Claimant’s appraisal (Exhibit No. 6, in evidence), established a before value on the subject property of $70,000; an after value of $28,250, and damage to property of $41,750. This was based upon direct damage or the taking in fee of 3.479± acres (Map No. 66, Parcel No. 108), based upon a valuation of $7,500 per acre or $27,984, and consequential damage as a result of the fee taking without access of 0.590± acres or $13,750 (Map No. 66, Parcel No. 109). It is claimant’s contention that the loss of frontage on Route 17C consequentially damaged its property and that the creation of highway frontage on the access road did not create any benefit to the subject property.
State’s appraisal states that the subject property benefited by the appropriation and thus there is no consequential damage. The direct damage is computed at $3,300 per acre on 3.449± acres and at $500 per acre for 0.62-± acres or a total damage of $11,692 (rounded to $11,700).
The commercial development of the land has a higher degree of desirability after the appropriation than before the appropriation according to the State’s appraiser. This is due to the greater availability of traffic and easier access to the subject property from all directions. The new IBM Bridge over the river, immediately east of the subject property, will connect Route 17C with the new four-lane Southern Tier Expressway and the existing old Route 17. Further, any signs erected upon the subject property will be visible from the new highway. No consequential damage resulted from the loss of the river frontage, according to the State, since such frontage served no advantage to the property.
The State relies on Brand v. State of New York (19 N Y 2d 634) as a basis for denial of consequential damage to the remainder, contending that the property enhanced in value due to the appropriation and construction of the new highway and access roadways. Claimant, on the other hand, maintains the loss of frontage on 17C has consequentially damaged its property and that, even though it now has greater roadway frontage, such frontage is on an access roadway and less valuable.
Claimant, although it admits that general and specific benefits constitute setoffs against consequential damages, maintains that such benefits were not proven in the instant case. The Brand case (supra) tried in the Court of Claims in 1963 was appealed, reversed by the Appellate Division (21 A D 2d 727) and remitted to the Court of Claims for a new trial. The *681 second trial (46 Misc 2d 645) resulted in a .second appeal (26 A D 2d 747) and the award modified and affirmed. The modification was necessitated by relatively minor errors in computations of quantities. In 1967, the Court of Appeals (19 N Y 2d 634) affirmed the award without opinion. Since both parties use the Brand case (supra) to arrive at their respective contrary conclusions, it is necessary for this court to carefully compare the facts of the instant case with the Brand case.
In the Brand case, the property, before the appropriation, consisted of 167± acres bounded by Spellman Road on the north and Route 9 on the east. There were 1900± feet of frontage on Route 9 and ,2850± feet of frontage on Spellman Road. The land was divided into two parcels. The largest parcel lay immediately west of Route 9 and contained 140.66± acres. This parcel contained all the buildings, the bulk of the better quality farmland, a gravel ridge and the road frontage. The other parcel of 26.34± acres lay west of the first parcel and joined same at its southwest corner. There was access between these parcels prior to the appropriation. The appropriated area contained 23.129± acres. Parcel No. 475 was appropriated in fee with access and contains 0.557± acres-. This is a strip of land on the south side of Spellman Road and affects 692± feet of frontage on said road. This parcel was taken primarily to construct the interchange from Route 87 onto Spellman Road and its banks near the Northway make access less suitable than prior to the appropriation. However, as there is still suitable access to the rear commercial land over the easterly portion of the appropriated land, the commercial value of the remaining land was not damaged. Parcel No. 476, appropriated in fee without access, contains 22.572± acres. This parcel severed claimant’s land south to north and took 724± feet of frontage on Spellman Road to the north and 472± feet on the .south boundary line. This parcel land-locked the afore-mentioned west parcel of 26.34± acres which contained 14.18± acres of crop-land and 12.16± acres of wooded pasture land. The landlocked portion also contained an unfailing water supply, which had been available to the whole farm operation. The landlocked portion was consequentially damaged by 90%.
The court said, in the Brand case (46 Misc 2d 645, 649-650): “It is our opinion that the State must do more than present to the court a study made of expressway interchanges and then expect the court to take the position that, because such a study indicates -that interchanges generally enhance value, this particular interchange has enhanced the value of these claimants’ remaining property. There should be some foreseeability to the *682 enhancement .not vague statements that it will be enhanced when the demand catches up with the supply. To paraphrase Matter of City of Rochester (Smith St. Bridge) (234 App. Div. 583) care must be taken not to substitute for reality the mere hope .of the State that the remaining property has been enhanced by the improvement. There should be a .showing of more than traffic counts because increase in traffic might damage as well as enhance.”
In the Brand case, the only concrete .proof presented by the State was a sale in 1963 of land opposite claimant’s land on Spellman Road for the alleged construction of a motel. The State also alluded to the so-called Conroy Apartments on Spell-man Road and opposite claimant’s property. The court viewed the property twice in 1965 and found nothing constructed upon the site, merely some excavation and footing and an air of abandonment. The State’s appraiser estimated the sales at $7 a front foot but the court found that the sale could just as well be within the $5 a front foot, allocated by claimant’s appraiser. Further, the court indicated that, if, in fact, actual benefit was found, it would be reluctant to apply it to the consequential damage caused by the land-locked 26.34± acres. In addition, since the State left the before and after value of Route 9 frontage the same, the court assumed that the State did not consider the interchange and increased traffic a benefit to that remaining property, although located less than one-half mile from, and in plain view of, the interchange.
The instant case differs substantially from the Brand case. First, the court has viewed the property and found a newly constructed supermarket and a motel. Unlike the Brand case, the State has offered proof of sales subsequent to the appropriation, demonstrating the enhancement in value due to the improvement caused by the appropriation and highway construction. Further, according to the Brand case and unlike the instant case, the consequential damage was greater than actual benefit if proven. In this case, consequential damages to the remaining property must be offset to the extent that such property has been benefited by the improvements. (See Esso Std. Oil Co. v. State of New York, 9 A D 2d 840; Reina v. State of New York, 28 A D 2d 1198).
This court finds that the appropriation, the construction of the Expressway and the access roadways, have benefited the subject property. Claimant now has greater access to its property and the value is enhanced. Therefore, this court adopts the State’s theory on benefit to the property and finds no consequential damage.
*683 In determining the value of property to determine direct damage, this court, as did the State appraiser, has not given consideration to a sale between Grand Union and Eastern Shopping Centers on September 20, 1956. From the indications, there are numerous interlocking and, apparently, related sales between these corporations, further reflected by the fact that no Internal Revenue stamps were posted .on the transaction. Claimant, by this sale, merely sought a return of its investment.
Claimant, in its appraisal, has set forth three sales: the first, a sale in 1959; the second, in 1963 and the third in 1960. Each sale was adjusted upward to the date of the appropriation since the trend indicated an appreciation in value to the date of the appropriation. Based upon the three sales as adjusted, claimant placed a value on the subject property, before the appropriation, of $70,000 or approximately $7,500 per acre.
The State also used three sales, adjusted for size, and further considering the dates of the sales, valued the fee ownership of 9.13± acres at $3,300 per acre and the area covered by the permanent easement (0.62± acres) at $500 per acre. Based upon this computation, the direct damage is $11,700. The remainder of the State’s appraisal devoted itself to establishing the after value of the property to be $15,000 per acre.
The three sales used by the State are referred to as .sale No. 2628, sale No. 2560 and sale No. 2617. Sale No. 2628 is located in the Hamlet of Campville and the sale made in 1963, and was zoned Industrial. Sale No. 2560 is in the Village of Owego, zoned Residential and the date of the sale was 1964. This is a T-shaped lot with a frontage of 280 feet. Sale No. 2617, zoned for Business, is located on the south side of Route 17C. This property sold for $4,500 and was 0.92± acres. This sale in 1964 is located between Route 17C and the railroad tracks, but did not extend to the railroad tracks. Because of the location of this property and its zoning, this court finds that the .subject property, at the time of the appropriation, has the same value as State’s Sale No. 2617. The court, therefore, finds .the value of the subject property to be $4,878.72 per acre or rounded ($4,900) per acre.
Claimant, seeking consequential damages, claims that the subsequent sale of the subject property on March 4,1968 for $25,050 substantiates its claim. In an examination before trial, offered and accepted into evidence at the time of the trial, it appears claimant was unaware of the value of its property at the time of the sale. No appraisal had been made of the property prior to the sale and no effort made to ascertain its value. The sale of 5± acres across the street from the subject property from *684 Barr and Wood to P & C Property Corporation sold for $12,000 per acre in 1967. The State’s other sales, to establish after value, also demonstrate the appreciated property values due to the new highway construction. This court finds that the after value is $12,000 per acre and for reasons stated disregards the .subsequent sale of the subject property. The court awards claimant $19,938 as direct damage.
The court finds that the fair and reasonable market value of the subject property, before the taking, was $47,775; that the fair and reasonable market value, after the taking, was $68,000 (rounded); and that the amount by which the claimant has been damaged, directly, is $19,938. The claimant is entitled to an award therefore in the amount of $19,938, together with appropriate interest.
The court has viewed the property.
CONCLUSIONS OF LAW
The claimant is awarded the sum of $19,938, for all damages, with interest thereon from the 5th day of November, 1965 to the 5th day .of May, 1966 and from the 23d day of October, 1967 to the date of entry of judgment herein.